**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **MOHAMED OUMAR** | **CIVIL ACTION NO. 26-1885** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE JERRY EDWARDS, JR.** |
| **WARDEN CENTRAL LOUISIANA** | **MAG. JUDGE CAROL B.** |
| **ICE PROCESSING CENTER, ET AL.** | **WHITEHURST** |

## MEMORANDUM RULING AND ORDER

Petitioner Mohamed Oumar,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.  Respondents oppose the petition.  [doc. # 4].  For reasons below, Petitioner's request for habeas corpus is GRANTED.

## Background

Petitioner is a citizen of Mauritania.  [doc. # 1, p. 3].  He entered the United States of America on October 20, 2023.  *Id.*  "[Petitioner] was also issued a warrant for arrest, stating that he was 'within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act.'  [He] was released on his own recognizance shortly after his initial detention."  *Id.*

While released, Petitioner "complied with release conditions including reporting, pursuing asylum, paying income taxes and obtaining work authorization for employment."  [doc. # 1, p. 4].

---

[1] Petitioner's "A Number" is 245-383-202.

1

"[Petitioner] paid income taxes in 2025.  [He] attended his court hearings outside of detention. [He] complied with all requirements set by Defendants in this matter." *Id.*

ICE re-detained Petitioner on approximately April 27, 2026, "during a traffic stop while he was lawfully operating a private vehicle."  [doc. # 1, pp. 2, 4].  He "had not committed nor was accused of any traffic or criminal violations when he was re-detained." *Id.* at 4.

Petitioner filed this proceeding on June 4, 2026.  He claims that his "re-detention without a hearing or other discretionary review violates the due process guarantees of the Constitution." [doc. # 1, p. 2].  He argues that he "acquired a protectable liberty interest in remaining out of custody under an Order of Release under Recognizance, such that he was entitled to a pre-deprivation hearing before revocation." *Id.*  He adds that pre-detention notice would reduce the likelihood of an erroneous loss of liberty. *Id.* at 8.

Respondents opposed the petition on July 8, 2026.  [doc. # 4].

<u>**Law and Analysis**</u>

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

**A. Liberty Interest**

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. AMEND. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government

custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

In *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), the Supreme Court held that the requirements of procedural due process applied to parole revocations.  The Court first noted that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482. Buttressing the parolee's interest in liberty is the society's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" and its interest "in treating the parolee with basic fairness." *Id.* at 484.

The Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.*  Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.*

Here, Petitioner's release on recognizance was similar to the parole described in *Morrissey*. His release allowed him—with the Government's explicit permission—the freedom to live in the United States.  Thus, Petitioner has a protected liberty interest in his release.[2]

---

[2] *See, e.g., O.F.C. v. Almodovar*, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("Both immigration parolees and those released on immigration bond are free to live their lives in this country and to form the . . . enduring attachments of normal life. . . . While released on bond, Petitioner was able

3

In addition, immigration officials released Petitioner subject to certain conditions.  *Id.* This was an "implicit promise" that his release would "be revoked only if he fail[ed] to live up to the [release] conditions," like in *Morrissey*.  *See* 408 U.S. at 482.  As other courts have held, "[w]hen a person [is released from custody and] lives in society at large for years, [reasonably believed that the law required his release], and only then faces re-incarceration on the ground that he was [erroneously] released, the prospect of re-incarceration has implications both for him and the other individuals in his life as substantial as those of the parolee in *Morrissey*."  *Hurd*, 864 F.3d at 682.

More importantly, procedural due process dictates that before Respondents re-arrest Petitioner, he be afforded notice and the opportunity to at least address Respondents' contentions surrounding his re-detention.  "[D]ue process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all."  *Aurecchione v. Falco*, 2023 WL 6255529, at *12 (S.D.N.Y. Sept. 25, 2023) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard.  The hearing must be 'at a meaningful time and in a meaningful manner.'")).  The two issues—procedural due process and the statutory interpretation of Sections 1225 and 1226 as addressed in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026)—overlap but are distinct.  Even assuming Petitioner is

---

to resume his life with his U.S.-citizen wife and his young U.S.-citizen children (one of whom was born while Petitioner was released). . . . The Court has little difficulty concluding that if the Government wishes to strip Petitioner of that liberty and these attachments, it must do so in a manner consistent with due process.") (internal quotation marks, quoted source, and record citation omitted).

detained under Section 1225 and subject to mandatory detention under the statute, his statutory and regulatory statuses do not foreclose his procedural due process claim.[3]

### B. *Mathews* Factors

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above militates in favor of Petitioner as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).   To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Petitioner established a liberty interest worthy of procedural protection when, with the Government's express permission, he exercised his freedom for approximately 2.5 years before the Government re-arrested him.   Respondents allowed Petitioner to establish his life in this country.   Terminating his valued liberty likely inflicted a grievous loss.   *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens

---

[3] *See Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Marceau's constitutional interest in her liberty exists above and apart from the Immigration and Nationality Act and attendant regulations.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").[4]

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—weighs in Petitioner's favor because the Government did not offer Petitioner any procedure before re-detaining him. The risk of erroneous deprivation of his liberty interest is obvious where there is no pre-detention process to determine if, for instance, his circumstances have changed.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—likewise weighs in Petitioner's favor. There is nothing before the Court demonstrating a governmental interest in continuing to detain Petitioner. While the Government has an interest in protecting the community and preventing flight, ICE already determined at least implicitly when it released Petitioner that he was not a flight risk or a danger to the community. Further, there is no indication in the record that Petitioner failed to comply with any conditions of release. But even if concerns of flight or protecting the community were present (nothing of record indicates that they are), the

---

[4] Even assuming *arguendo* that Petitioner's time living in the United States was insufficient to create a cognizable liberty interest (it was not), Respondents provided him with a liberty interest when they released him from custody. It is well established that once the government opts to provide a liberty or property interest, it cannot arbitrarily revoke this benefit without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (holding in the context of "good-time credits" for prisoners that "a person's liberty is equally protected [by the due process clause], even when the liberty itself is a . . . creation of the State"); *Morrissey*, 408 U.S. at 482 (noting "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others"); *Graham v. Richardson*, 403 U.S. 365, 374 (1971) (rejecting the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege").

parties can address them at a pre-deprivation hearing.[5]  Finally, Respondents do not identify any fiscal or administrative burden in providing additional or substitute process.[6]

Because all the factors support Petitioner, the Government violated his right to procedural due process under the Fifth Amendment to the United States Constitution.  Moreover, given the weight of the liberty interests at stake and the fact that a custody determination already occurred, immediate release is the appropriate remedy.  *See Alvarez- Rico* 2026 WL 522322 at *6 (immediate release); *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 498 (E.D.N.Y. 2025) (ordering immediate release where the petitioner was re-detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("Indeed, given the nature of the constitutional violation [petitioner] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment *before* [re-]detaining him—any post-deprivation review by an immigration judge would be inadequate.").

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993).  "The

---

[5] *See Lopez-Arevelo*, 801 F. Supp. 3d at 687 ("[I]f such concerns exist, they would be squarely addressed if the Court were to grant the petition and order a bond hearing.").

[6] *See generally Alvarez Rico,* 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) ("Indeed, given the high costs of detention, the fiscal and administrative burdens of providing noncitizens in these circumstances with some form of hearing pales in comparison with the burdens of re-detaining thousands of noncitizens who were previously released on recognizance."); *J.C.L.A.*, 2025 WL 2959250, at *7 ("[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is low.  In immigration court, custody hearings are routine and impose a minimal cost.  If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (internal quotation marks and quoted sources omitted).

constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)) (internal quotation marks omitted).  "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'"  *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

Accordingly, Petitioner is entitled to release in accordance with the terms and conditions of his prior release.[7]

Respondents contend that under *Sosnava Rodriguez v. Ortega*, No. 26-50183, -- F.4th --, 2026 WL 1906557, at *7 (5th Cir. July 2, 2026): "the Government may statutorily and

---

[7] *See, e.g.*, *Diallo v. Trump*, 1:25-cv-2012 (W.D. La. March 5, 2026); *Alvarez-Rico*, 2026 WL 522322, at *7 ("Respondents' re-detention of Alvarez-Rico without a pre-detention showing (or even allegation) of a change in his circumstances violated Alvarez-Rico's procedural due process rights."); *Lopez-Arevelo*, 801 F. Supp. 3d at 674; *Marceau*, 2026 WL 368953, at *2 (collecting similar cases and similar dispositions); *J.C.L.A.*, 2025 WL 2959250, at *1 (finding, where the petitioner was released on his own recognizance in August 2024, and re-arrested in September 2025, that the petitioner was likely to succeed on the merits of his procedural due process claim because he had a protected liberty interest in release); *Guillermo M. R. v. Kaiser*, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); *Vilela v. Robbins*, 2025 WL 3101334, at *6 (E.D. Cal. Nov. 6, 2025) ("Petitioner had been out of custody for nearly a year, and during that time, lived with her sister, worked, and developed ties to the community.  Her detention denies her that freedom."); *Lnu v. Bondi*, 2026 WL 395290, at *7 (W.D. Wash. Feb. 12, 2026).

constitutionally detain Petitioner for a period of ninety days without an individualized bond hearing. Because ninety days have not yet passed since Petitioner's arrest, the habeas petition in this case is premature and must be denied." [doc. # 4, p. 2]. After Respondents filed their response, however, the Fifth Circuit vacated the panel opinion in *Rodriguez v. Ortega*. *See Rodriguez v. Ortega*, No. 26-50183, 2026 WL 2014647, at *1 (5th Cir. July 10, 2026). Thus, the Court need not postpone Petitioner's release.

### Conclusion

For the reasons above, **IT IS ORDERED** that Petitioner Mohamed Oumar's request for habeas corpus is **GRANTED**. Respondents, and the warden of Central Louisiana ICE Processing Center, shall (A) **release Petitioner from custody within three (3) business days** in accordance with appropriate conditions to be determined by the Department of Homeland Security and (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release.

In Chambers, Alexandria, Louisiana, this 28th day of July, 2026.

_____
JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE